UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-322-GWU

CHARLES OLINGER,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the Court on cross-motions

for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.     Is the claimant currently engaged in substantial gainful activity?
       If yes, the claimant is not disabled.  If no, proceed to Step 2.
       See 20 C.F.R. 404.1520(b), 416.920(b).

2.     Does the claimant have any medically determinable physical
       or mental impairment(s)? If yes, proceed to Step 3.  If no, the
       claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.     Does the claimant have any severe impairment(s)--i.e., any
       impairment(s) significantly limiting the claimant's physical or
       mental ability to do basic work activities?  If yes, proceed to

1

Olinger

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

Olinger

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

3

Olinger

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.  If there is, we then examine:  (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence

before it, despite the plaintiff's claims that he was unable to afford extensive medical

work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592

(6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a

factor to be considered against the plaintiff, Hale v. Secretary of Health and Human

Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

Olinger

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Olinger

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In

6

Olinger

such cases, the agency may be required to consult a vocational specialist.  <u>Damron</u> <u>v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley  v. Secretary of</u> <u>Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Olinger, a 42 year-old former electrical cable and brakes installer, forklift operator, janitor, pipe layer, security guard, and welder with a "limited" education, suffered from impairments related to borderline intelligence, coronary artery disease (being status post coronary artery bypass times five), non-insulin dependent diabetes mellitus, chronic obstructive pulmonary disease secondary to nicotine abuse, obesity, and a history of alcohol abuse.  (Tr. 21-23, 25).  While the plaintiff was found to be unable to return to any of his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 24).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 25-26).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 24).

Olinger

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Betty Hale included an exertional limitation to light level work reduced from a full range by such non-exertional restrictions including (1) an inability to ever climb ladders, ropes, or scaffolds; (2) an inability to ever work with the hands over the head; (3) a need to avoid work requiring concentrated exposure to dust, gases, fumes, chemicals, temperature extremes, or excessive humidity; (4) an inability to ever perform aerobic activities; (5) a limitation to entry-level work with simple one-two-three step procedures and no frequent changes in work routines or requirement for problem solving, independent planning and setting of goals; and (6) a need to avoid more than occasional interaction with the general public.  (Tr. 344).  In response, the witness identified a significant number of light and sedentary level jobs which could still be performed.  (Tr. 344-346).  Therefore, assuming that the vocational factors considered by Hale fairly depicted the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error.  Dr. Mark Burns examined Olinger and found no restrictions with regard to sitting, standing, moving about, lifting, carrying,

8

Olinger

handling objects, hearing, seeing, speaking or traveling.  (Tr. 291).  The physical

factors of the hypothetical question were fully compatible with this opinion.  The

question was also essentially consistent with the physical limitations indicated by Dr.

Parandhamulu Saranga (Tr. 182-193) and Dr. Jorge Baez-Garcia (Tr. 242-248), the

non-examining medical reviewers.   The claimant asserts that, in view of his

extensive heart problems, these reports should not be considered credible.

However, he cites no evidence which specifically contradicts these opinions.  More

severe physical limitations than those found by the ALJ were not reported by such

treating and examining sources as the staff at Samaritan Hospital (Tr. 132-139), the

staff at the Central Kentucky Medical Group (Tr. 140-142), the staff at Saint Joseph

Hospital (Tr. 143-165), Dr. Hamid Mohammadzadeh (Tr. 166-170), Dr. Steve Lin

(Tr. 171-173), the staff at the Appalachian Heart Center (Tr. 174-176), Dr.

Abdulkader Dahhan (Tr. 177-181), the staff at Little Flower Free Clinic (Tr. 249-277,

280-287) and Dr. Ward Ransdell (Tr. 278-279).  These reports provide substantial

evidence to support the administrative decision.

The ALJ also dealt properly with the evidence of record relating Olinger's

mental condition.  Psychologist James Leisenring examined the plaintiff and opined

that he would be "moderately" limited in his ability to understand, remember and

carry out instructions.  (Tr. 202).  The ALJ's limitation to entry level work with only

simple procedures is compatible with this limitation.  Psychologist Jane Brake (Tr.

9

Olinger

218-219) and Thompson Prout (Tr. 238-239), the non-examining medical reviewers,

each indicated that the claimant would be "moderately" limited in his ability to

maintain attention and concentration for extended time periods and to respond

appropriately to changes in the work setting.    These restrictions were also

essentially included in the hypothetical question.    The ALJ's findings were not

contradicted by those of another treating or reviewing medical source.    Therefore,

the hypothetical question fairly depicted Olinger's mental condition.

Olinger argues that the ALJ erred in failing to find that his heart condition met

the requirements of Section 4.04 of the Listing of Impairments.    The requirements

of Section 4.04 include:

> Ischemic heart disease, with chest discomfort associated with
> myocardial ischemia as described in 4.00E3, while on a regimen of
> prescribed treatment (see 4.00A if there is no regimen of prescribed
> treatment). With one of the following:
>
> A. Sign- or symptom-limited exercise test demonstrating at least one
> of the following manifestations at a workload equivalent to five METs
> or less:
>       1. Horizontal or downsloping depression, in the absence of
> digitalis glycoside therapy and or hyopkalemia, of the ST segment of
> at least -0.10 millivolts (-1.0mm) in at least 3 consecutive complexes
> that are on a level baseline in any lead (other than aVR) and that
> have a typical ischemic time course of development and resolution
> (progression of horizontal or downsloping ST depression with
> exercise, and persistence of depression of at least -0.10 millivolts for
> at least one minute of recovery); or
>       2. An upsloping ST junction depression, in the absence of
> digitalis glycoside therapy and or hyopkalemia in any lead (except
> aVR) of at least -0.2 millivolts or more for at least 0.08 seconds after
> the J junction and persisting for at least one minute of recovery; or

10

Olinger

3. At least 0.1 millivolts (1 mm) ST elevation above resting baseline during both exercise and 3 or more minutes of recovery in ECG leads with low R and T waves in the leads demonstrating the ST segment displacement; or

4. Failure to increase systolic pressure by 10 mmHg or decrease in systolic pressure below usual clinical resting level (see 4.00D2b); or

5. Documented reversible radionuclide "perfusion" (thallium[201]) defect at an exercise level equivalent to 5 METs or less;

OR

B. Impaired myocardial function, documented by evidence (as outlined under 4.00C3 or 4.00C4b) of hypokinetic, akinetic, or dyskinetic myocardial free wall or septal wall motion with left ventrical ejection fraction of 30 percent or less, and an evaluating program physician, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise testing would present a significant risk to the individual and resulting marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though the individual is comfortable at rest;

OR

C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation), and an evaluating program physician, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise testing would present a significant risk to the individual, with both and 1 and 2:

1. Angiographic evidence revealing;

a. 50 percent or more narrowing of a non-bypassed left main coronary artery; or

b. 70 percent or more narrowing of another non-passed coronary artery; or

c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a non-bypassed coronary artery; or

d. 50 percent or more narrowing of at least 2 non-bypassed coronary arteries; or

11

Olinger

       e. Total obstruction of a bypass graft vessel; and
       2. Resulting in marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though the individual is comfortable at rest.

The plaintiff does not present specific evidence relating to how this Listing is satisfied or equaled. Instead, the claimant asserts that this Listing is too difficult for lay persons to analyze and evaluate and, so, the ALJ was required to consult or obtain expert evidence from a medical expert in the cardiac field.

Olinger cites no case law or regulation in support of this assertion. The administration did obtain consultative examinations by Dr. Dahhan and by Dr. Burns, neither of whom indicated that the plaintiff met or equaled the Listing or imposed totally disabling functional restrictions. The medical record was reviewed by Dr. Saranga and Dr. Baez-Garcia, neither of whom found that the Listing was met or imposed disabling restrictions. The administrative regulations recognize that these medical reviewers are "...highly qualified physicians and psychologists who are experts in Social Security disability evaluation." 20 C.F.R. Section 404.1527(f)(2)(I). Furthermore, it was the claimant's burden to present evidence showing that he met or equaled the Listing rather than that of the defendant to show it was not met. Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001). Therefore, the Court must reject Olinger's argument.

Olinger

The undersigned concludes that the administrative decision should be affirmed.  Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 2nd day of May, 2007.

**Signed By:**

_G. Wix Unthank_

**United States Senior Judge**

13